437 So.2d 1072 (1983)
Ernest FITZPATRICK, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 60097.
Supreme Court of Florida.
July 21, 1983.
Rehearing Denied October 13, 1983.
*1074 P. Douglas Brinkmeyer, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Miguel A. Olivella, Jr. and Gregory C. Smith, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant Ernest Fitzpatrick was convicted of first-degree murder, two counts of attempted first-degree murder, and three counts of kidnapping. The trial judge imposed a death sentence for the crime of first-degree murder, concurrent sentences of life imprisonment for each attempted murder, and concurrent sentences of thirty years imprisonment for each of the kidnapping offenses. We have jurisdiction to review this case under article V, section 3(b)(1), of the Florida Constitution. We affirm the convictions, the separate kidnapping sentences, and the sentence of death.
On April 29, 1980, appellant entered a realty office with a .38 caliber revolver taped to his hand. He accosted a secretary named Mary Blake and told her he wanted to use her as a shield and take her to a bank located a block away. When she resisted and screamed, he threatened to shoot her in the leg. He took her down a hallway toward the back of the building and rounded a corner. A delivery boy, Eric Shaw, entered the front door and walked down the same hallway, looking for someone to sign a receipt. When he turned the corner appellant pointed the revolver at him and told him not to run or else he would shoot him. Holding Blake around the waist and alternately pointing the pistol at her and at Shaw, appellant forced his two hostages back down the hallway in order to lock the front door. Shaw went to the front door but could not lock it because he did not have a key. He then re-joined appellant and Blake in the hallway.
Meanwhile, David Parks, who was in a nearby office when appellant entered the building, called the sheriff. Emerging from his office and trying to keep his voice as calm as possible, Parks asked Mary Blake what was wrong and if he could help her. Appellant pointed the gun at Parks and told him not to come any closer. Parks offered appellant the keys to his car and some money. Appellant refused, saying he wanted Blake to go with him. Appellant then marched his three hostages into the main *1075 office adjoining the reception area. Appellant sat on a desk chair next to the window in a partition between the main office and the reception area and forced Blake to sit on his lap. He told Shaw to lock the office door and ordered him and Parks to sit down at opposite walls. Appellant said that he would have to shoot the police when they arrived and then shoot his hostages and himself.
Within ten minutes of Parks' phone call, two sheriff's deputies arrived and entered through the front door. The senior one, Deputy Smith, saw Shaw through the open partition and motioned to him to be quiet. Deputy Smith crept down the hallway and tried turning the handle to the office door. Upon finding it was locked he bumped the door a couple of times and announced that he was from the sheriff's department. He heard several voices shout and shots fired. One bullet passed through the wall near his head.
At about the time Deputy Smith stopped knocking, Deputy Heist pointed his gun through the partition and ordered appellant to freeze. Appellant swung around in the chair and shot Deputy Heist in the head, killing him. Shaw unlocked the office door and ran out while Parks jumped appellant, attempting to wrestle the gun away from him. As they fell to the floor struggling, Mary Blake escaped from the office. Appellant fired more shots, hitting Parks in the head. Then he pushed Parks away, stood up, and tried to fire his gun again, but the revolver was empty. Deputy Smith, who had entered the office, fired two shots, hitting appellant in the shoulder.
Appellant was charged with and convicted of the first-degree murder of Deputy Heist, the attempted first-degree murders of Deputy Smith and David Parks, and the kidnappings of Parks, Mary Blake, and Eric Shaw. In accordance with the jury's recommendation the trial judge imposed a sentence of death.
As his first point on appeal appellant argues that he was denied a fair trial in violation of the sixth amendment to the United States Constitution when the trial court refused to excuse four veniremen for cause and refused to grant him additional peremptory challenges. He claims that he was forced to use four of his ten peremptory challenges to excuse veniremen who were biased in favor of the death penalty. During voir dire two of the veniremen stated that the death sentence was appropriate for anyone who committed murder, a third felt death was appropriate if there were eyewitnesses to the murder, and the fourth felt that the death sentence should be imposed anytime a police officer is shot in the line of duty. These statements were made in response to defense counsel's questioning the prospective jurors about their general feelings concerning the death penalty. When the prosecuting attorney explained that under Florida law the death penalty is not automatic under any situation and asked if they would be able to follow the court's instructions and weigh the aggravating circumstances against the mitigating circumstances in making their recommendation, they all said they could.
This case is unlike Thomas v. State, 403 So.2d 371 (Fla. 1981), where we reversed a defendant's conviction because the trial judge refused to excuse for cause a venireman who conceded that he could not recommend any kind of mercy under any circumstances if the defendant were found guilty of murder. In this case none of the four veniremen ever indicated that he was unalterably opposed to recommending life sentences for convicted murderers. Their statements only indicated a tendency toward being in favor of the death penalty. "A man who opposes the death penalty, no less than the one who favors it, can make the discretionary judgment entrusted to him by the State and can thus obey the oath he takes as a juror." Witherspoon v. Illinois, 391 U.S. 510, 519, 88 S.Ct. 1770, 1775, 20 L.Ed.2d 776 (1968) (emphasis added). Witherspoon requires that veniremen who oppose the death penalty be excused for cause only when irrevocably committed before the trial to voting against the death penalty under any circumstances or where their views on capital punishment would *1076 interfere with finding the accused guilty. We find that the same standard should be applied when excusing for cause a venireman who is in favor of the death penalty. A judge need not excuse such a person unless he or she is irrevocably committed to voting for the death penalty if the defendant is found guilty of murder and is therefore unable to follow the judge's instructions to weigh the aggravating circumstances against the mitigating circumstances.
Appellant's argument that he had an insufficient number of peremptory challenges is premised on the assumption that he unnecessarily used four of them to excuse the above-mentioned veniremen. At oral argument appellant's counsel conceded that there is nothing in the record to show that if appellant had been given more he would have used them. Since we find that the trial judge did not abuse his discretion in declining to excuse for cause the four veniremen, there is no basis for holding that appellant had an insufficient number of peremptory challenges. We therefore hold that appellant's right to a fair trial by an impartial jury under the sixth amendment was not violated.
Appellant's next point on appeal is that the court erred in entering judgments and sentences for the three counts of kidnapping. Appellant argues that Florida's kidnapping statute does not apply where the victim is moved an insignificant distance in a short period of time. See Friend v. State, 385 So.2d 696 (Fla. 1st DCA 1980); Harkins v. State, 380 So.2d 524 (Fla. 5th DCA 1980). He contends that the emerging trend is to narrowly construe kidnapping statutes so that they do not apply where the kidnapping is inherent in or "merely incidental" to the commission of another crime. See, e.g., People v. Daniels, 71 Cal.2d 1119, 80 Cal. Rptr. 897, 459 P.2d 225 (1969); State v. Buggs, 219 Kan. 203, 547 P.2d 720 (1976); People v. Adams, 389 Mich. 222, 205 N.W.2d 415 (1973); People v. Levy, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842, cert. denied, 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965); State v. Logan, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979).
We recently analyzed these and other cases and concluded that "the `merely incidental' rule does not apply in situations where the purpose in confining or moving another person is to use that person as a hostage." Mobley v. State, 409 So.2d 1031, 1036 (Fla. 1982) (footnote omitted). In Mobley we affirmed the kidnapping convictions of three prisoners who held two guards and an attorney as hostages during an attempted escape. We noted that although the prisoners "were not charged with confining the victims with the intent of using them as hostages, evidence that they did use them as hostages is relevant and sufficient proof that the kidnappings were not incidental to the attempted escape." Id. at 1037. Unlike in Mobley, appellant in this case was charged under that portion of the statute that defines kidnapping as the unlawful confining of another person against his will with the intent of holding him as a shield or hostage. See § 787.01(1)(a)1, Fla. Stat. (1979). Since there is sufficient evidence to show that appellant confined the victims against their will with the intent to use them as shields or hostages, he committed a kidnapping regardless of the distance the victims were moved or the time they were held. Furthermore the kidnappings in this case were not "merely incidental" to the commission of another crime. See Faison v. State, 426 So.2d 963 (Fla. 1983). We therefore find there was no error in entering separate judgments and sentences for the three counts of kidnapping.
Next appellant asserts that there was insufficient proof of premeditation to support his convictions for first-degree murder and attempted first-degree murder. This assertion is belied by appellant's statements to the three hostages that he was going to shoot them after shooting the police. The record shows that he did indeed begin shooting after the police had announced their presence. We thus find there was sufficient evidence of premeditation to support these convictions.
*1077 We now turn to the sentencing phase of the trial. Appellant first argues that the jury was unduly influenced by the judge's instructing them that two of the statutory aggravating circumstances did not apply. He contends that this instruction implied that the judge felt that all the other aggravating circumstances were applicable.
We do not find any error. The aggravating circumstances which the judge instructed the jury not to consider were whether appellant was under sentence of imprisonment and whether he had previously been convicted of a felony involving the use or threat of violence to another person. Unlike some of the other aggravating circumstances which require some finding be made as to a defendant's subjective intentions for committing a murder, these two aggravating circumstances depend upon factors which can be objectively determined. Since at the time of the sentencing hearing appellant had not been convicted of a prior felony nor was he under sentence of imprisonment, the trial judge correctly concluded that these two aggravating circumstances did not exist as a matter of law at the time the jury was to consider its recommendation. More important, the judge instructed the jury that an aggravating circumstance had to be established beyond a reasonable doubt and that if any aggravating circumstances were found to exist they would have to be weighed against the mitigating circumstances. These additional instructions dispensed with any possible implication that the judge felt all the remaining aggravating circumstances were applicable.
After the jury returned with its advisory recommendation of a death sentence, the trial judge issued his written findings of fact. The judge found that the aggravating circumstance in section 921.141(5)(b), Florida Statutes (1979), was proven. That aggravating circumstance is, "The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person." Id. The judge grounded this finding on the two attempted murder convictions and three kidnapping convictions in this case. The judge also found that, "The defendant knowingly created a great risk of death to many persons." § 921.141(5)(c), Fla. Stat. (1979). The judge based this on the defendant's shooting at not only the murder victim but also at two other men, along with his holding others hostage at gunpoint, causing numerous armed deputies to proceed to his location. The judge also found that the murder was committed while the defendant was engaged in commission of the felony of kidnapping, id., § 921.141(5)(d), based on the proven facts of the case. The judge found further that the murder was committed for the purpose of avoiding or preventing his arrest by Deputy Heist. Id., § 921.141(5)(e). The judge found that section 921.141(5)(f), that "the capital felony was committed for pecuniary gain" applied in that the entire incident grew out of appellant's attempt to use hostages to aid him in the robbery of a bank.
Regarding the statutory mitigating circumstances of section 921.141(6), Florida Statutes (1979), the judge found that none of them had been shown. Statutory mitigating circumstance (6)(a), lack of a significant history of criminal activity, was negated, the judge found, by appellant's serious acts of delinquency while a juvenile. The judge found that there was no extreme mental or emotional disturbance under section 921.141(6)(b), and found that testimony showed the defendant to have been in complete control of his behavior. The judge found that there was no consent or participation by the victim, id., § 921.141(6)(c), no major participation or domination by an accomplice, id., § 921.141(6)(d), (e), and no impairment of appellant's capacity to appreciate the criminality of his acts or to conform his conduct to the requirements of the law. Id., § 921.141(6)(f). Finally, the judge found that appellant's age of twenty years at the time of the crime was not a mitigating factor because he was mature enough to have been on his own for several years.
Regarding possible nonstatutory mitigating circumstances, the judge found that *1078 there were none, rejecting arguments based on appellant's unfavorable background and the failure of state rehabilitation authorities to intervene.
Even though the trial judge did not instruct the jury on the aggravating circumstance of whether appellant had previously been convicted of a felony involving the threat or use of violence to another person, he himself found it to be an aggravating circumstance. He did so on the basis of the contemporaneous convictions for kidnapping and attempted first-degree murder. This was proper. See Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981); Lucas v. State, 376 So.2d 1149 (Fla. 1979).
The judge also properly found that appellant knowingly created a great risk of death to many persons. See Lucas v. State; Raulerson v. State, 358 So.2d 826 (Fla.), cert. denied, 439 U.S. 959, 99 S.Ct. 364, 58 L.Ed.2d 352 (1978). The murder occurred during a raging gun battle with the police with three hostages present.
There is no question that the murder was committed while appellant was engaged in the commission of a felony, in this case kidnapping, and that it was committed for the purpose of avoiding or preventing a lawful arrest. The finding that the murder was committed for pecuniary gain is supported by the trial court's finding that appellant had planned a bank robbery for several months and had proceeded as far as the hostage stage before he was interrupted. The fact that the robbery was never completed is irrelevant so long as there was an attempt. See Mikenas v. State, 367 So.2d 606 (Fla. 1978).
Appellant next challenges the judge's refusal to find any of the statutory mitigating factors present. He claims that he had no significant history of prior criminal activity as an adult. However, he had attempted an armed robbery and a bombing of a school when he was minor. Since the purpose of this mitigating factor is to help ascertain a defendant's character, we do not believe that a trial judge should be limited to looking at a defendant's adult criminal activity. A defendant's juvenile record can be just as relevant in determining the defendant's character. Because appellant's prior criminal activity as a minor was significant, the judge properly found this not to be a mitigating factor.
Appellant also argues that his emotional condition should have been considered as a mitigating circumstance under subsections 921.141(6)(b), (e), and (f), Florida Statutes (1979). There was lay testimony that appellant had mental problems. This was corroborated by a clinical psychologist's testimony that appellant was someone of dull-normal intelligence with grandiose feelings and by a psychiatrist's testimony that appellant had a schizoid personality. All of this testimony was considered and rejected by both the jury and the judge. That decision was theirs and not ours to make. Since there was nothing in the record to indicate that their conclusions or the methods followed in reaching them were improper, we accept their conclusions. Smith v. State, 407 So.2d 894 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982); Lucas v. State; Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979).
Appellant argues that the court erred in not finding his age, twenty years, to be a mitigating circumstance. "There is no per se rule which pinpoints a particular age as an automatic factor in mitigation." Peek v. State, 395 So.2d 492, 498 (Fla.), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). In this case the record supports the judge's decision not to consider appellant's age as a mitigating circumstance.
Finally appellant argues that his right against double jeopardy was violated by the judge's imposing separate sentences for the three counts of kidnapping. He relies on State v. Pinder, 375 So.2d 836 (Fla. 1979), where this Court held that in a felony-murder prosecution, the double jeopardy clause bars separate conviction and *1079 sentence for the underlying felony. In State v. Hegstrom, 401 So.2d 1343 (Fla. 1981), we receded from Pinder's holding that separate convictions could not be entered, but held that section 775.021(4), Florida Statutes (1979), prevented the imposition of a separate sentence for the underlying felony in a felony-murder prosecution. That principle does not apply in this case, however, since there was sufficient proof of premeditation. See Tafero v. State, 403 So.2d 355 (Fla. 1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982).
We therefore affirm appellant's convictions, the separate sentences for kidnapping, and the sentence of death.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD and EHRLICH, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
McDONALD, Justice, concurring in part/dissenting in part.
I concur in the judgment of conviction but am unable to do so in the sentence of death. The trial judge erred in finding that Fitzpatrick's killing of the deputy sheriff was for pecuniary gain. While it is true that the deputy interrupted Fitzpatrick's grandiose and bizarre plan to rob a bank, that factor does not convert his slaying into one for pecuniary gain, directly or indirectly. No robbery was in progress when this took place.
I also feel that the trial judge erred when he failed to find both statutory and nonstatutory mitigating circumstances. The evidence was not in dispute on the character and background of Fitzpatrick. It clearly demonstrated a strong personality disorder. His juvenile record reflected a continuing inability to adapt to living in conformity with rules. He thought himself a "genius" and was constantly "inventing" things and seeking patents on them, only to find them constantly rejected. This dull normal black boy, the eighth of thirteen children, was himself rejected by his mother. As stated by the psychologist, "his thinking was indeed impaired and that impairment, according to a degree, was relatively severe, not so severe that he did not understand the consequences of his actions, but severe enough that in my opinion they played a part in his acting very impulsively without proper forethought and setting himself up again for failure and punishment." The testimony is replete with episodes clearly indicating that he suffered from stress and acted under compulsion and with gross impaired thinking. As a juvenile he had been placed in a mental hospital and had attempted suicide.
Fitzpatrick is dangerous. In all likelihood he should never be on the streets again. Nevertheless, I do think there are mitigating circumstances in his case, and that, together with an improperly found aggravating circumstance dictates a remand for reconsideration of the sentence.
OVERTON, J., concurs.