527 So.2d 809 (1988)
Earnest FITZPATRICK Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 70927.
Supreme Court of Florida.
June 30, 1988.
*810 Edward S. Stafman, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Gary L. Printy, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Earnest Fitzpatrick Jr. appeals his sentence of death. Fitzpatrick was originally convicted of first degree murder and sentenced to death for the April, 1980 shooting of Escambia County deputy Doug Heist. This Court affirmed the conviction and sentence, Fitzpatrick v. State, 437 So.2d 1072 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984). On a subsequent petition for habeas corpus, this Court vacated the death sentence and remanded the case to the trial court for re-sentencing, Fitzpatrick v. Wainwright, 490 So.2d 938 (Fla. 1986). At that proceeding Fitzpatrick was again sentenced to death, and he appeals his sentence. We have jurisdiction under Article V, section 3(b)(1), of the Florida Constitution. For the reasons which follow we vacate the sentence of death and reduce his sentence to life imprisonment without possibility of parole for twenty-five years.
On April 29, 1980, Fitzpatrick took a bus to a real estate office with the intent to carry out a plan. His plan called for him to take a hostage from the real estate office, march the hostage up the street to a bank, and then rob the bank using the hostage as a shield. The plan called for Fitzpatrick to escape into the crowd, get lost in the postrobbery confusion, and then take a bus home.
When Fitzpatrick entered the office with a gun taped into his hand, he held a secretary hostage in the office and announced his plan to use her as a shield to protect himself. At that point a delivery boy entered the office and Fitzpatrick held him hostage as well. Hearing the commotion from an adjoining office, David Parks called the sheriff's department. Parks then entered the office where Fitzpatrick was holding the hostages and attempted to diffuse the situation by offering Fitzpatrick his car and some money. Fitzpatrick refused the offer and locked himself and the three hostages in an inner office to await the arrival of the police. He stated that he would have to shoot the police officers, the hostages and himself.
Two deputies arrived later. One deputy named Smith knocked on the door of the office where Fitzpatrick was holding the hostages and announced that he was from the sheriff's department. Shots were fired from within the office, and one bullet passed through the wall near Deputy Smith's head. A second deputy named Heist pointed his gun at Fitzpatrick's head through a partition near where Fitzpatrick was standing. Surprised, Fitzpatrick whirled around and fired, hitting Deputy Heist in the head, mortally wounding him. Parks jumped up and attempted to wrestle the gun away from Fitzpatrick. Fitzpatrick fired three more shots, hitting Parks once. Deputy Smith fired two shots, hitting Fitzpatrick in the shoulder.
Fitzpatrick was charged with and convicted of first degree murder, attempted first degree murder, and kidnapping. Following the jury's recommendation, the court sentenced him to death. On resentencing, *811 the trial court found the following aggravating factors:
1. Fitzpatrick was previously convicted of another capital felony or a felony involving the use or threat of violence;
2. Fitzpatrick knowingly created great risk of death to many persons;
3. The capital felony was committed while Fitzpatrick was engaged in the commission of, or attempted commission of an enumerated felony, namely kidnapping;
4. The capital felony was commited for the purpose of avoiding or preventing a lawful arrest; and
5. The capital felony was committed for pecuniary gain.
The trial judge found the following statutory mitigating circumstances:
1. The capital felony was committed while Fitzpatrick was under the influence of extreme mental or emotional disturbance;
2. The capacity of Fitzpatrick to appreciate the criminality of his conduct to the requirements of law was substantially impaired; and
3. The age of Fitzpatrick at the time of the crime.
Following a jury recommendation against life imprisonment, the trial judge again sentenced Fitzpatrick to death.
On appeal Fitzpatrick raises several issues for this Court to review. However, because of our disposition of the first issue raised, we need not discuss issues two through twenty-one. The principal issue of concern in this case is whether the death penalty is appropriate under these facts. We believe it is not.
Any review of the proportionality of the death penalty in a particular case must begin with the premise that death is different. In State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied sub nom., 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), this Court upheld Florida's amended capital punishment statute, stating that:

Death is a unique punishment in its finality and in its total rejection of the possibility of rehabilitation. It is proper, therefore, that the Legislature has chosen to reserve its application to only the most aggravated and unmitigated of most serious crimes.

Id. at 7 (emphasis added). As we further stated in Dixon, the legislature intended the death penalty to be imposed "for the most aggravated, the most indefensible of crimes." Id. at 8. In Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), Justice Stewart began his concurring opinion with an instructive admonition:
The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity.
408 U.S. at 306, 92 S.Ct. at 2760 (Stewart, J., concurring) (quoted in Hamblen v. State, 527 So.2d 800 (Fla. 1988) (Barkett, J., dissenting)).
It is with this background that we must examine the proportionality and appropriateness of each sentence of death issued in this state. A high degree of certainty in procedural fairness as well as substantive proportionality must be maintained in order to insure that the death penalty is administered evenhandedly.
The record on resentencing is replete with evidence of Fitzpatrick's substantially impaired capacity, his extreme emotional disturbance, and low emotional age. Those present at the scene of the shooting testified that Fitzpatrick appeared "psychotic," "high," "spacey," "panicky" and "wild." Fitzpatrick's family members and those who had known him for throughout most of his life testified that he frequently talked to himself as if he were hearing voices and that during conversations he would "phase out" or "just go off in left field." His landlord referred to him as "goofy."
These descriptions are consistent with the evidence presented by several experts testifying at the resentencing hearing. The unanimous opinion of these mental and *812 physical health professionals was that Fitzpatrick suffered from extreme emotional and mental disturbance and that his capacity to conform his conduct to the requirements of the law was substantially impaired.[*] Each expert testified that Fitzpatrick's emotional age was between nine and twelve years old. One expert even declared that Fitzpatrick was, in lay terms, "crazy as a loon." These opinions were based on extensive examination, counseling and clinical study of Fitzpatrick. They were the product of careful, fastidious examination by men who are among the foremost experts in their respective fields. A neurologist testified that his physical examinations of Fitzpatrick revealed extensive brain damage with symptoms resembling schizophrenia.
Thus, the trial judge's findings of the mitigating circumstances of extreme emotional or mental disturbance, substantially impaired capacity to conform conduct, and low emotional age were supported by sufficient evidence. In contrast, the aggravating circumstances of heinous, atrocious and cruel, and cold, calculated and premeditated are conspicuously absent. Fitzpatrick's actions were those of a seriously emotionally disturbed man-child, not those of a cold-blooded, heartless killer. We do not believe that this is the sort of "unmitigated" case contemplated by this Court in Dixon. Indeed, the mitigation in this case is substantial.
Therefore, we find that this case does not warrant the imposition of our harshest penalty. We must emphasize that our decision is not a reweighing of aggravating and mitigating circumstances. Quite simply, we believe that in comparison to other cases involving the imposition of the death penalty, this punishment is unwarranted in this case. See, Ferry v. State, 507 So.2d 1373 (Fla. 1987); Amazon v. State, 487 So.2d 8 (Fla.), cert. denied, 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986). We note that the record on resentencing is substantially different from that of the original sentencing. Thus, while it is true that we upheld the sentence of death on the original direct appeal, the additional live expert testimony allows us to examine the appropriateness of the sentence of death in light of the fresh record developed on resentencing. We believe that this additional evidence shows the mitigating circumstances outweigh the aggravating circumstances, and thus renders the death penalty inappropriate.
Accordingly, we vacate Earnest Fitzpatrick's sentence of death, and reduce that sentence to life imprisonment without possibility of parole for twenty-five years.
It is so ordered.
OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, C.J., concurs in result only.
NOTES
[*] The panel of experts who had examined Fitzpatrick included one psychiatrist, one neurologist (who is also a psychiatrist), and one psychologist. In addition, several counsellors who had dealt extensively with Fitzpatrick throughout his life testified as to his mental condition.