538 So.2d 829 (1989)
Timothy C. HUDSON, Appellant,
v.
STATE of Florida, Appellee.
No. 70093.
Supreme Court of Florida.
January 19, 1989.
Rehearing Denied March 23, 1989.
James Marion Moorman, Public Defender and Steven L. Bolotin, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Peggy A. Quince and Lauren Hafner Sewell, Asst. Attys. Gen., Tampa, for appellee.
PER CURIAM.
Hudson appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm Hudson's convictions and sentences.[1]
A jury convicted Hudson of first-degree murder, armed burglary, and theft of an automobile and recommended that he be sentenced to death. Finding that the aggravating circumstances outweighed the mitigating circumstances, the trial court imposed a death sentence, prompting this appeal.
Two months after breaking up with his girlfriend, Hudson entered her home during the night, armed with a knife. The former girlfriend, having received threats from Hudson, spent the night elsewhere. Her roommate, however, was at home. When she began screaming at him to leave, Hudson stabbed her. He then put the body in the trunk of the victim's car, drove away, and left the body in a drainage ditch at a tomato field. He abandoned the victim's car the following morning. The former *830 girlfriend reported her roommate missing and indicated that she had been having problems with Hudson. The police interviewed Hudson, who was under a sentence of community control for a prior conviction of sexual battery. After he admitted having violated the terms of that control, the police arrested him. After being readvised of his Miranda rights, in response to later questioning Hudson told the police several stories about the murder and his involvement in it.[2]
As his first point on appeal, Hudson argues that the trial court erred in denying his motion to suppress his confession. According to Hudson, a police sergeant twice took him aside and subjected him to a variation of the "Christian burial technique,"[3] thereby manipulating his emotions and overcoming his free will. Hudson claims that the sergeant's misconduct rendered his confession inadmissible.
At the suppression hearing the sergeant testified as to what he had said to Hudson:
At that time I explained it to him. He advised me that he understood. I then appealed to Mr. Hudson's emotions in regard to the fact that I asked him if he had ever been to a funeral. And, obviously, he responded "Yes." I asked him if he had ever been to a funeral without a body. He said he had not.
I then conveyed that most of us don't go to funerals without a body. And that for the family to put this situation to rest, due to the fact he had already advised us that he had seen the body, that the young lady was, in fact, dead, I was aware of that fact, I said, "The family has to know that. And the only way that he will ever know that is to observe and see the body."
After hearing all the testimony, the court found that the police had not threatened Hudson and that "the detective investigating this matter followed all the prescribed techniques for investigation and forewarning him of his Constitutional Rights for self-protection." The court then denied the motion to suppress.
This Court has characterized the Christian burial technique as "a blatantly coercive and deceptive ploy." Roman v. State, 475 So.2d 1228, 1232 (Fla. 1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986). As in Roman, however, we find the sergeant's reference to finding the body so that it could be buried insufficient to make an otherwise voluntary statement inadmissible. The police read Hudson his rights at least twice, and Hudson indicated that he understood them before waiving them. The only promise made to Hudson was that he would be taken away from the body's location as soon as possible. We agree with the trial court that this promise did not coerce Hudson's confession. We disagree that police overreaching or coercive police conduct[4] rendered Hudson's confession involuntary. *831 Therefore, we find no reversible error regarding the suppression issue.
Hudson also argues that the death penalty is disproportionate in his case and that the trial court erred in giving little or no weight to the mitigating evidence.[5] It is up to the trial court to decide if any particular mitigating circumstance has been established and the weight to be given it. Toole v. State, 479 So.2d 731 (Fla. 1985); Daugherty v. State, 419 So.2d 1067 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983). See also Roberts v. State, 510 So.2d 885 (Fla. 1987) (trial court may accept or reject expert testimony just as the testimony of any other witness may be accepted or rejected), cert. denied, ___ U.S. ___, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988). Our review of the record reveals no support for Hudson's contentions that the trial judge abused his discretion regarding the mitigating evidence or that he refused to consider any of the testimony Hudson presented in an attempt to mitigate his sentence.
"Our function in reviewing a death sentence is to consider the circumstances in light of our other decisions and determine whether the death penalty is appropriate." Menendez v. State, 419 So.2d 312, 315 (Fla. 1982). After reviewing this case, we cannot agree with Hudson that the death penalty is not warranted when compared with other cases. In arguing that, under proportionality review, we should reduce his sentence to life imprisonment Hudson asks us to consider the statutory and nonstatutory mitigating evidence in spite of the trial court's refusal to find much in mitigation. We have already found no error in the trial court's consideration of the aggravating and mitigating evidence. Thus, what Hudson really asks is that we reweigh the evidence and come to a different conclusion than did the trial court. It is not within this Court's province to reweigh or reevaluate the evidence presented as to aggravating or mitigating circumstances. Brown v. Wainwright, 392 So.2d 1327 (Fla. 1981). We must, therefore, decline Hudson's invitation to reweigh the mitigating evidence and place greater emphasis on it than the trial court did.
Hudson relies on several cases in arguing that death is not appropriate in his case. After studying them, however, we find all of them distinguishable. In Wilson v. State, 493 So.2d 1019 (Fla. 1986), the defendant killed his father and young cousin during a heated domestic confrontation. This Court invalidated one of the three aggravating circumstances and, despite the lack of mitigating circumstances, found the death sentence not warranted on the facts of that case.
In comparison the trial judge in the instant case found two valid aggravating circumstances so there is no possibility that he assigned any weight to, or relied on in any way, an invalid aggravating circumstance. Additionally, Hudson did not kill this victim in a domestic confrontation, heated or otherwise. Instead, Hudson entered a home, where he knew he was not welcome and had no right to be, at night and armed with a knife, apparently expecting to find someone (probably his ex-girl-friend) at home. Contrary to Hudson's contention, these facts could easily be seen as demonstrating more than just slight premeditation. There are, therefore, more dissimilarities than similarities between this case and Wilson.
The same is true of Peavy v. State, 442 So.2d 200 (Fla. 1983), and Thompson v. State, 456 So.2d 444 (Fla. 1984). In Peavy this Court threw out one aggravating circumstance, leaving three to be weighed against two mitigating circumstances and remanded for resentencing. In Thompson not only did we find that invalid aggravating circumstances had been used, but we also found that the trial court should not *832 have overridden the jury's recommendation of life imprisonment. Holsworth v. State, 522 So.2d 348 (Fla. 1988), as Hudson concedes, is also distinguishable as an improper jury override case.
In Proffitt v. State, 510 So.2d 896 (Fla. 1987), we disapproved a death sentence and compared Mason v. State, 438 So.2d 374 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Proffitt had no prior conviction of a crime of violence and was given the benefit of the mitigating factor of no significant history; Mason had a prior conviction of violence as does Hudson. Proffitt was not under any type of restraint, Hudson was. There was no evidence that Proffitt was armed when he entered the home he burglarized; Hudson was armed. Thus, Hudson's situation is more closely allied to Mason than Proffitt.
Caruthers v. State, 465 So.2d 496 (Fla. 1985), is also distinguishable from the instant case, based on the strength of the mitigating circumstances, including no significant prior history of criminal activity, and this Court's finding two of the three aggravating factors not to have been established beyond a reasonable doubt. In Ross v. State, 474 So.2d 1170 (Fla. 1985), the defendant killed his wife in a drunken rage. The domestic setting, together with the substantial mitigating circumstances (notably no prior criminal history), distinguishes Ross from this case.
Finally, while arguably a close call, we also find Fitzpatrick v. State, 527 So.2d 809 (Fla. 1988), distinguishable. This Court approved all five of the aggravating factors found by the trial court in Fitzpatrick. In view of the three mitigating circumstances, however, this Court stated: "Fitzpatrick's actions were those of a seriously emotionally disturbed man-child, not those of a cold-blooded, heartless killer." Id. at 812. Fitzpatrick's experts found his emotional age to be between nine and twelve years, and one characterized him as "crazy as a loon." Id. Hudson's mitigating evidence is not as compelling as that presented by Fitzpatrick, and we do not find that Fitzpatrick controls the proportionality review in this case.
Based on our review of other cases and the facts of this case, we do not find Hudson's death sentence disproportionate. We affirm Hudson's convictions and sentences.[6]
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
SHAW, J., concurs in the conviction, but dissents from the sentence.
BARKETT, Justice, concurring in part and dissenting in part.
I concur as to guilt and dissent as to sentencing. In his sentencing order, the trial judge made the following findings:
The facts of the case, as produced by the evidence, indicate that the defendant, TIMOTHY CURTIS HUDSON, was apparently surprised by the victim during the defendant's burglarizing of the home owned by the victim and shared with the defendant's ex-girlfriend....
... .
The extensive testing done by Dr. Berland on the defendant, together with the circumstances of the surprise of the defendant during the burglary when confronted by the victim, convinces the Court that at the time of the killing and for at least a short period thereafter, the defendant was unable, to a certain extent, to conform his conduct to the requirements of law... .
In light of our prior case law, I cannot conclude that the death penalty is proportionate under these facts. As was stated in the seminal case of State v. Dixon, 283 So.2d 1, 7 (Fla. 1973), the death penalty is *833 reserved "to only the most aggravated and unmitigated of most serious crimes." In light of the trial judge's explicit findings, I conclude that the murder in this case is not within the category of crimes described in Dixon.
KOGAN, J., concurs.
NOTES
[1] The jury also convicted Hudson of armed burglary and grand theft, and the trial court sentenced him to terms of life imprisonment and five years, respectively, for those crimes. Hudson does not challenge these other convictions and sentences, and our review of the record has disclosed no reversible error regarding them.
[2] Briefly, these commenced with a story by Hudson that he had been with a person named Peabody and told of events with and about him. Hudson was told by the police that these stories were disbelieved. After further discussion with police officers, he advised that he would take them to the deceased's car and body. They searched Hudson's described area to no avail. A further talk with an officer resulted in Hudson's new agreement to show them where the body was. Hudson led them to the deceased's car, after which he led the police to another area where a green army blanket lay. At this time the defendant said that this was where "Peabody" had put the body and somebody had taken it. After a further discussion questioning this story, Hudson finally led them to another area where this time the body was found. Hudson was crying at this time. The police took Hudson back to the police station. He was reminded of his Miranda rights. Hudson said "I don't want to say this but once, so get it right the first time." Hudson calmed down and then gave a statement fully implicating himself.
[3] The Christian burial technique has been used to convince suspects to disclose the location of a victim's body so that the victim could receive a Christian burial. See Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); Roman v. State, 475 So.2d 1228 (Fla. 1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986).
[4] Coercive police conduct is a predicate for finding a confession involuntary within the meaning of the fourteenth amendment. Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).
[5] Hudson does not contest the court's finding two aggravating factors, previous conviction of a violent felony and committed during an armed burglary. Our review of the record shows that the state proved these circumstances beyond a reasonable doubt. The trial court found, but gave little weight to, the statutory mitigating factors of being under extreme mental or emotional disturbance, impaired capacity to conform conduct to requirements of law, and Hudson's age (22 years).
[6] Hudson also argues that he should receive a new penalty hearing because the prosecutor's closing argument and the trial court's refusal to give instructions requested by the defense deprived him of a fair trial. We have considered these arguments, but find that they are not supported by the record and that no reversible error occurred.