574 So.2d 1085 (1991)
Donald GUNSBY, Appellant,
v.
STATE of Florida, Appellee.
No. 73616.
Supreme Court of Florida.
January 15, 1991.
Rehearing Denied March 4, 1991.
*1086 James B. Gibson, Public Defender and Christopher S. Quarles, Asst. Public Defender, Chief, Capital Appeals, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Donald Gunsby appeals his first-degree murder conviction and his death sentence, imposed by the trial judge in accordance with the jury's recommendation. We have jurisdiction.[1] For the reasons expressed, we affirm Gunsby's conviction for first-degree murder and his sentence of death.
The relevant facts established at trial are as follows. On April 20, 1988, Donald Gunsby was attending a party in Ocala where he was told that a friend had been in an altercation with one of the proprietors of a nearby grocery store. Gunsby and *1087 others went to the store, and they learned that the man who had supposedly fought with their friend was no longer at the store. Gunsby threatened to hurt the man if he returned to the store. After a visit to the hospital to see their friend, Gunsby and the others returned to the party. While there, according to one witness, Gunsby stated that he was "tired of those damn Iranians[2] messing with the black." Gunsby then left the party again, and when he returned he was wearing a camouflage suit. According to one witness, Gunsby had a gun.
The evidence at trial established that at 9:30 p.m. Donald Gunsby entered the grocery store wearing camouflage clothing. Without saying anything, he fired one shot from a shotgun at the victim, who was the brother of the man who had supposedly fought with Gunsby's friend earlier that day. Gunsby immediately ran from the store, followed unsuccessfully by the victim's brother, who fired three shots from a pistol at Gunsby as he fled. Gunsby returned to the party briefly and, according to one witness, said that he had taken care of the problem. He was later identified from a photo lineup and at trial by the cashier of the convenience store and by the victim's brother, both of whom were eyewitnesses to the shooting.
The medical examiner testified that the victim died of a shotgun wound to the right side of the chest. The wound was one and three-quarter inches in diameter and caused massive hemorrhaging and injury to the right lung, liver, and heart. The victim's body contained dozens of shotgun pellets, and the doctor rendered an opinion that the victim had been conscious for up to a minute and had died within two to three minutes after being shot.
Gunsby presented several alibi witnesses who testified that he was away from the scene on the evening of the offense. He also presented a police officer who testified that he had overheard the victim's father identify another man as the murderer, and Gunsby presented a man who had been in jail with him who testified that Gunsby had told him that one of the state's witnesses was lying to protect her boyfriend, whom Gunsby believed was the killer. The jury found Gunsby guilty of first-degree murder, as charged in the indictment.
In the penalty phase, the state presented documentary evidence concerning Gunsby's prior offenses involving violence, specifically, an aggravated assault committed in 1967, for which he was sentenced to three and one-half years in the state prison system, and an armed robbery committed in 1971, for which he was sentenced to ten years in the state prison system. In addition, the state presented evidence that Gunsby had been convicted in March, 1988, of possession of a firearm by a felon, carrying a concealed firearm, and having an improper license tag. For the two felony offenses, Gunsby was to have served eighteen months in prison, followed by two years of community control. However, he failed to report to jail on March 9, 1988, as ordered, so a warrant for his arrest was issued. That warrant was outstanding at the time of the murder.
The state also presented a witness who was an acquaintance of Gunsby and who testified that he saw Gunsby at the party on the day of the murder and that Gunsby was behaving normally. In addition, the state presented a court-appointed psychiatrist who testified that Gunsby did not suffer from mental illness, was competent to stand trial, and was able to distinguish right from wrong on the day of the murder.
Gunsby presented two witnesses in the penalty phase who testified that he was a good neighbor who liked children. He also presented two mental health experts. The first testified that Gunsby was mildly retarded, with spelling skills at a third-grade level, reading skills at a fourth-grade level, and an IQ of less than fifty-nine. However, he also testified that Gunsby was not schizophrenic or otherwise mentally ill. The other mental health expert testified that Gunsby was, indeed, schizophrenic, incompetent to stand trial, insane at the time *1088 of the offense, and a candidate for involuntary hospitalization. This psychologist also testified that Gunsby's reading comprehension was at a third-grade level and his verbal skills were at an eighth-grade level. The state extensively cross-examined this witness, in light of the obvious conflict with the other mental health experts.
The jury recommended the death penalty by a nine-to-three vote. The trial judge, in agreeing with the jury, found three aggravating circumstances: (1) that the murder was committed in a cold, calculated, and premeditated manner; (2) that Gunsby had been previously convicted of felonies involving the use or threat of violence; and (3) that Gunsby was under sentence of imprisonment when he committed the murder. The judge found one nonstatutory mitigating factor, that Gunsby is mildly retarded and intellectually functions on a third or fourth grade level. The judge concluded that "[v]iewed in the light of the defendant's past history of violence and the circumstances of this case, defendant's mental condition carries little weight." Consequently, the judge found that the aggravating factors outweighed the mitigating factors, and he imposed the death sentence.

Guilt Phase
Gunsby claims that during the guilt phase of his trial, the trial court erred by: (1) dismissing prospective jurors who stated that they could not discharge their duties as jurors because of their strong feelings concerning the death penalty; (2) allowing one witness to testify that others at the party saw the outline of a gun under Gunsby's clothing; (3) excluding evidence of drugs in the victim's system; (4) instructing the jury concerning felony murder; and (5) committing numerous errors which had the cumulative effect of denying Gunsby a fair trial.
With regard to the first claim, the trial judge preliminarily questioned the venire concerning, among other things, whether their strong feelings for or against the death penalty would render them unable to fairly decide the case. He excused members of the venire who affirmatively stated that they would be unable to discharge their duty as jurors. Gunsby did not object to the procedure used by the trial judge, nor did he ask to make inquiries of the proposed jurors. We find that under these circumstances he has waived the right to challenge the excusal of these potential jurors. See Hoffman v. State, 474 So.2d 1178 (Fla. 1985); Bundy v. State, 471 So.2d 9 (Fla. 1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986); Maxwell v. State, 443 So.2d 967 (Fla. 1983); Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598, (1981).
In his second claim, Gunsby argues that the trial court erroneously admitted the following testimony on examination by the prosecutor:
BY MR. MOORE:
Q Ms. Brown, what do you mean by the "print of a gun?" Can you explain to us what you mean?
A The handle of the gun was on his right side. It was more than me seen it. It was at least 
[DEFENSE COUNSEL]: Objection, your Honor; hearsay.
THE COURT: Objection overruled.
BY MR. MOORE:
Q Go ahead.
A It was at least 50 people there and I am quite sure at least ten people seen it.
The answer to the question was speculative, not hearsay. Although the answer produced by the question should not have been admitted, we find the error harmless beyond a reasonable doubt.
In his next claim, Gunsby asserts that it was error for the trial judge to deny him the opportunity to cross-examine the medical witness concerning any drugs detected during the autopsy of the victim. Given the total circumstances of this case, we find that the trial judge did not abuse his discretion in determining that this subject was not a proper subject of cross-examination. Consequently, there was no trial court error.
*1089 In his fourth claim of error, Gunsby asserts that the trial court improperly instructed the jury on felony murder. We note that a charge of possession of a firearm by a convicted felon was severed prior to Gunsby's trial. However, the trial judge, at the conclusion of the trial, instructed the jury on felony murder. Gunsby now argues that since the state produced no evidence supporting the underlying felony of possession of a firearm by a convicted felon, the instruction on felony murder was error. Counsel for Gunsby not only did not object to the instruction given by the trial judge, he expressly approved the instructions given. Even if there was error in how these instructions were given, under Florida Rule of Criminal Procedure 3.390(d), Gunsby may not now raise this issue. See, Walton v. State, 547 So.2d 622 (Fla. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 759, 107 L.Ed.2d 775 (1990); Bottoson v. State, 443 So.2d 962 (Fla. 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 223, 83 L.Ed.2d 153 (1984); Harris v. State, 438 So.2d 787 (Fla. 1983), cert. denied, 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 563 (1984); Foster v. State, 436 So.2d 56 (Fla. 1983), cert. denied, 464 U.S. 1052, 104 S.Ct. 734, 79 L.Ed.2d 193 (1984). Further, given the testimony, the error, if any, was clearly harmless beyond a reasonable doubt. We note that this case was tried on the theory of premeditated murder.
Finally, we find that Gunsby's claim that the cumulative effect of errors during the course of this trial denied him a fair trial is without merit.

Penalty Phase
Gunsby challenges his death sentence on the following grounds: (1) the trial court allowed improper Williams[3] rule evidence over Gunsby's objection; (2) the trial court erred in its finding of aggravating factors and in its consideration of mitigating evidence; (3) the death sentence in this case is disproportionate; (4) the trial court and the state improperly diminished the importance of the jury's role in the sentencing process; and (5) Florida's capital sentencing statute is unconstitutional on its face and as applied.
With regard to the first claim, the alleged Williams rule evidence was admitted during the testimony of the woman who reared Gunsby. Gunsby called the woman as a witness during the penalty phase, and the state, in its cross-examination, asked her whether Gunsby had a habit of carrying guns. Gunsby objected on the grounds that the question called for speculation. The trial court overruled the objection and allowed the woman to testify concerning an incident where police took two guns from Gunsby which he had been carrying while cleaning yards. Gunsby now claims that the testimony was irrelevant and prejudicial, and that it violated the Williams rule. He also complains that documentary evidence concerning prior firearm convictions was given to the jury.
The state points out that the objection raised by Gunsby to this testimony was that the witness's answer called for speculation, not that it was inadmissible under the Williams rule. Further, trial counsel did not request a curative instruction or a mistrial. We find the testimony was not improper in the context in which it was presented. Given the fact that this was impeachment of a defense character witness, examining the witness about a specific act of misconduct by Gunsby that was known by the witness was proper cross-examination and was not a violation of the Williams rule.
In his second point in the penalty phase, Gunsby claims that the trial judge erred in finding that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. Gunsby asserts that his delusion that he was a protector of the black community helped form a pretense of justification which renders this aggravating factor inapplicable. We disagree. The record is clear that Gunsby himself was never harassed or threatened in any way *1090 by the victim or by the victim's brother. In fact, the evidence reflects that Gunsby's delusion seemed to be directed toward ridding his neighborhood of drug dealers. However, this murder was not predicated upon the fact that the victim was a drug dealer. We find that there exists no reasonable pretense of moral or legal justification under the circumstances of this case. Further, we find that this record clearly supports the heightened premeditation necessary to support this aggravating circumstance.
The other two aggravating circumstances are also fully supported by the record. Gunsby had previously been convicted of aggravated assault and sentenced to three and one-half years in the state prison in 1967. He also had been convicted of armed robbery and sentenced to ten years in the state prison in 1971. There is no question that the second aggravating circumstance, that he had been previously convicted of crimes of violence, was properly applied in this case.
Further, the record clearly establishes that Gunsby had been sentenced to incarceration but had not reported to jail as ordered and that a warrant had been issued for his arrest. These circumstances justify a finding that Gunsby was under a sentence of imprisonment at the time of this offense. We reject the contention that there must be an escape for this aggravating circumstance to apply, and we conclude that this aggravating circumstance was properly found. See Songer v. State, 544 So.2d 1010 (Fla. 1989).
Gunsby next argues that the trial court did not give proper consideration to the mitigating evidence which he presented. He also argues that the application of the death penalty is disproportionate in this case. The record reflects that the trial judge considered the conflicting testimony of the mental health professionals, along with the other testimony and evidence. He resolved the conflicts among the mental health experts and, to a large extent, rejected the testimony of the expert who concluded that Gunsby had a severe mental condition. The resolution of factual conflicts is solely the responsibility and duty of the trial judge, and, as the appellate court, we have no authority to reweigh that evidence. See Lopez v. State, 536 So.2d 226 (Fla. 1988); Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985); Martin v. State, 420 So.2d 583 (Fla. 1982), cert. denied, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). The trial judge found that Gunsby's diminished mental capacity was a nonstatutory mitigating factor, but he also found that "the aggravating circumstances far outweigh the mitigating circumstance and the only appropriate sentence is death."
We also conclude that his sentence is proportionately correct. We reject Gunsby's argument that a life sentence is dictated by our previous decisions in Livingston v. State, 565 So.2d 1288 (Fla. 1988); Fitzpatrick v. State, 527 So.2d 809 (Fla. 1988); and Wilson v. State, 493 So.2d 1019 (Fla. 1986). We find a number of dissimilarities between the instant case and those cases. First, Wilson involved a heated domestic confrontation, so it was completely unlike the murder in the instant case. In addition, in Livingston and Fitzpatrick, there were no disputes among experts considering the extent of the mental disabilities of the defendants. After a review of the records in Livingston, Fitzpatrick, and the instant case, we find the sentence of death in this case is proportionately correct.
Gunsby's fourth claim is that the trial court and the jury instructions diminished the importance of the jury's role in the sentencing process, in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). As Gunsby admits, this claim was not preserved by any objection to any of the instructions of which he now complains. We find that this claim is procedurally barred. Further, we find that the statements and instructions of which he now complains are correct statements of Florida law.
Finally, we reject Gunsby's claim that Florida's death penalty statute is unconstitutional on its face and as applied in this case.
*1091 Accordingly, we affirm Donald Gunsby's conviction for first-degree murder and the sentence of death imposed by the trial court.
It is so ordered.
OVERTON, McDONALD and GRIMES, JJ., and EHRLICH, Senior Justice, concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which BARKETT, J., concurs.
SHAW, C.J., concurs with conviction, but dissents from sentence.
KOGAN, Justice, concurring in part, dissenting in part.
While I concur in the conviction, I dissent as to the sentence. I do not agree with the majority that the testimony of the mental health experts conflicted so greatly as to require a different result from that reached in Fitzpatrick v. State, 527 So.2d 809 (Fla. 1988). The general thrust of the expert testimony was that Gunsby's mind operates at the level of a child. As in Fitzpatrick, Gunsby was delusional and his "actions were those of a seriously emotionally disturbed man-child." Id. at 812. Accordingly, I would find the death penalty disproportionate and would reduce the penalty to life in prison without possibility of parole for twenty-five years. See id.
BARKETT, J., concurs.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.
[2] The proprietors of the grocery store were Iranian.
[3] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).