PARIENTE, J.,
concurring in part and dissenting in part.
I concur in part because Jeffries is entitled, at the very least, to a new penalty phase pursuant to Hurst v. State, 202 So.3d 40 (Fla. 2016), cert. denied, — U.S. -, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017). However, I dissent in part because I conclude that under our precedent, Jef-fries’s death sentence should be reduced to life imprisonment because an equal or more culpable defendant, Challender, re *552 ceived a life sentence based on a conviction for first-degree murder.
Testimony adduced at trial indicates that Challender was the “prime instigator” of the burglary and armed robbery, Hazen v. State, 700 So.2d 1207, 1214 (Fla. 1997), had greater motive to commit the murder, and spent more time alone with the victim before the murder. According to Griffin, a third codefendant who was Jeffries’s girlfriend at the time of the murder and assisted law enforcement in apprehending Challender and Jeffries, Challender suggested targeting the victim in Panama City when the three codefendants needed money. Challender also knew that a window in the victim’s house would be open.[5] According to evidence presented at trial, including Griffin’s testimony, the victim died in his bathroom after Challender struck him with a toilet plunger and tortured him by threatening to mutilate his genitals if he did not disclose his debit card’s PIN. For most of the time that Challender was in the bathroom with the victim, Jeffries was elsewhere in the house searching for valuables to steal. Moreover, the evidence indicates that Challender’s motive to torture and kill the victim was much stronger than Jeffries’s. The record reflected that all three defendants knew the victim, but Challender had actually stayed in the victim’s home with the victim, and Mercer, Challender’s mother, had a romantic relationship with the victim. Although the extent of the relationship between the victim and Mercer is unclear, it strains logic to accept that Mercer’s nephew, Jeffries, rather than her son, Challender, had an equal or greater motive to rob, kill, and mutilate the victim’s genitals following the end of Mercer’s relationship with the victim. In fact, before the murder, Challender told Jeffries that he wanted to drown the victim in his pool. Further, on the way to the victim’s house, Challender also indicated he wanted to “whip” the victim.
Despite this evidence, the plurality disregards Challender’s equal or greater culpability simply because the prosecutor offered Challender a plea deal. See majority op. at 548. The plurality’s failure to conduct a relative culpability analysis contradicts our decision in McCloud v. State, 208 So.3d 668 (Fla. 2016), and our other precedent on relative culpability. Either the plurality has receded sub silentio from McCloud and our precedent requiring a relative culpability review between code-fendants or has chosen to, without explanation, confuse this Court’s relative culpability jurisprudence in cases where the record establishes that a codefendant, who accepted a plea to first-degree murder in exchange for a life sentence, is equally, if not more culpable, than the defendant.
In McCloud, we “reject[ed] any principle of law that hamstrings this Court’s ability to conduct a full proportionality review, including a relative culpability analysis, simply because the State allowed a code-fendant to enter a plea to murder that resulted in a life sentence.” Id. at 688. To ensure that the death penalty is not imposed arbitrarily or capriciously, this Court must determine whether legitimate reasons exist why one defendant is sentenced to death and another equally culpable or more culpable defendant receives life imprisonment for first-degree murder based on a guilty plea. See id. at 689 (explaining that the fact that the codefen-dants “were convicted of a lesser degree of murder is not dispositive of their relative culpabilities”). While I appreciate that there is prosecutorial discretion involved in the decision whether to offer one defendant a plea deal while seeking the death penalty against the other defendant, I disagree that this discretionary decision ren *553 ders the relative culpability of the death-sentenced defendant unreviewable in all cases. See id. at 688. In fact, this Court has conducted a relative culpability analysis even when a prosecutor had made “the strategic decision to give [the codefendant] a life sentence in exchange for testimony putting [the defendant] at the scene of the crime,” without which the State would only have had circumstantial evidence against the defendant. Hazen, 700 So.2d at 1211— 12.
Our obligation to review the sentences of similarly situated individuals has been part of our proportionality review since we upheld the death penalty in State v. Dixon, 283 So.2d 1, 7 (Fla. 1973). See also Fitzpatrick v. State, 527 So.2d 809, 811 (Fla. 1988); Slater v. State, 316 So.2d 539, 542 (Fla. 1975). As this Court explained in Scott v. Dugger, 604 So.2d 465, 468 (Fla. 1992), “Even when a codefendant has been sentenced subsequent to the sentencing of the defendant seeking review on direct appeal, it is proper for this Court to consider the propriety of the disparate sentences in order to determine whether a death sentence is appropriate given the conduct of all participants in committing the crime.”
I acknowledge, as the plurality explains, that there may be cases where a defendant’s relative culpability cannot be assessed from the face of the record. See majority op. at 547-48. This is not such a case, where the evidence adduced at trial indicates that Challender had greater motive to commit the murder, spent more time alone with the victim before the murder, and was the prime instigator of the burglary and armed robbery. At the very least, we should remand for an evidentiary hearing on the issue of Jeffries’s culpability relative to Challender’s so that the trial court can conduct a proper assessment.
Thus, consistent with our precedent that has “long recognized” that a less culpable defendant cannot receive a death sentence when an equal or more culpable .codefen-dant receives a lesser sentence, McCloud, 208 So.3d at 688 (citing Hazen, 700 So.2d at 1214), Jeffries’s sentence of death must be vacated and his sentence reduced to life imprisonment without the possibility of parole. Accordingly, I dissent as to the plurality’s refusal to consider the life sentence of the codefendant. I can only hope that in a new sentencing hearing, the jury will be able to review the relative culpability of Challender and Jeffries as a basis for rendering a verdict for life imprisonment rather than death for Jeffries. In my view, any other result in this ease would be an injustice.
QUINCE, J., concurs.

. Officers found no sign of forced entry.