583 So.2d 323 (1991)
Perry Alexander TAYLOR, Appellant,
v.
STATE of Florida, Appellee.
No. 74260.
Supreme Court of Florida.
June 27, 1991.
Rehearing Denied August 20, 1991.
*325 James Marion Moorman, Public Defender and Steven L. Bolotin, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Perry Alexander Taylor appeals his convictions for murder and sexual battery and the related sentence of death. We have jurisdiction under article V, section 3(b)(1), Florida Constitution.
Taylor was charged with the murder and sexual battery of Geraldine Birch whose severely beaten body was found in a dugout at a little league baseball field. Shoe prints matching Taylor's shoes were found at the scene. Taylor confessed to killing Birch but claimed that the sexual contact was consensual and that the beating from which she died was done in a rage without premeditation. Taylor testified that on the night of the killing, he was standing with a small group of people when Birch walked up. She talked briefly with others in the group and then all but Taylor and a friend walked off. Taylor testified that as he began to walk away, Birch called to him and told him she was trying to get to Sulphur Springs. He told her he did not have a car. She then offered sex in exchange for cocaine and money. Taylor agreed to give her ten dollars in exchange for sex, and the two of them went to the dugout.[1]
Taylor testified that when he and Birch reached the dugout they attempted to have vaginal intercourse for less than a minute. She ended the attempt at intercourse and began performing oral sex on him. According to Taylor, he complained that her teeth were irritating him and attempted to pull away. She bit down on his penis. He choked her in an attempt to get her to release him. After he succeeded in getting her to release her bite, he struck and kicked her several times in anger.
The jury convicted Taylor on both counts. Upon the jury's unanimous recommendation, the trial judge sentenced Taylor to death.[2]
*326 Taylor raises three issues related to the guilt phase of his trial. First, he contends that the trial court erred by failing to conduct a Neil inquiry upon the prosecutor's peremptory challenge of a black prospective juror. State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986), established the test for determining whether a party is exercising peremptory challenges on the basis of improper bias. The complaining party must make a timely objection, demonstrate that the challenged persons are members of a distinct racial group, and show a strong likelihood that they were challenged because of their race. If the trial court determines that there is such a substantial likelihood, the other party must show that the challenges were not exercised solely because of the jurors' race. If the court determines no such likelihood exists, no inquiry into the challenges is required. Neil, 457 So.2d at 486-87.
During jury selection Taylor, who is black, objected to the state's peremptory challenge of prospective juror Farragut. Farragut was one of four black members of the venire and the first black to reach the jury box. In response to the Neil motion, the prosecutor told the court that he was not systematically excluding blacks from the panel because the effect of striking Farragut was to place a black woman on the panel.[3] The trial judge stated that he could not at that time find that the state was systematically excluding blacks from the jury and did not require the state to give its reasons for challenging juror Farragut. Defense counsel then exercised a peremptory challenge against the black woman. Later in the jury selection, the state exercised a peremptory challenge against the third black prospective juror to reach the jury box. Defense counsel again made a Neil motion, and the following interchange occurred:
THE COURT: I will require the State to give a valid reason for exercising a peremptory challenge as to Jacqueline Boyd since there is no other black left on this panel other than Charlie Robinson, who unequivocally stated that he could never vote to recommend death. I now find the State may well be systematically removing blacks from this jury panel.
MR. BENITO [prosecutor]: My concern with Ms. Boyd would be the fact that she has two children [and] my reading of her questionnaire seemed to indicate that she lived in the area where this offense took place.
THE COURT: What was your first reason, Mr. Benito? The second one, merely because she lives in the area, I don't find is any reason peremptorily or not to challenge somebody. What was the first reason?
MR. BENITO: The fact that she has two children.
THE COURT: [Does] [t]he Defense want Jacqueline Boyd on their jury? ... Or [do] the Defense and the State want to excuse her, and then I don't have to worry about whether the State is systematically excluding blacks.
... .
MR. BENITO: I was incorrect as to where she lived, Judge... . Judge, I will leave it up to the Defense. They can either have Jacqueline Boyd or Linda Custer, the one after Ms. Boyd.
MR. SINARDI [defense counsel]: Judge, again we would renew our previous objections to the State.
THE COURT: He is withdrawing it.
MR. SINARDI: That's fine, then.
Ms. Boyd served on the jury.
Taylor claims two errors occurred here. First, he argues that the trial court applied the incorrect standard when it determined that the state was not systematically excluding blacks and denied his Neil motion with respect to juror Farragut. Second, he contends that once the trial judge found, upon the challenge to juror Boyd, that the state might be exercising its peremptory challenges discriminatorily the court was *327 required to obtain the state's reasons for the earlier challenge of juror Farragut.
We find no error in the trial court's initial refusal to require the state to provide its reasons for challenging juror Farragut because defense counsel did not demonstrate a strong likelihood that Farragut was challenged solely because of his race. Farragut was the first and, as a result of the withdrawal of the challenge to juror Boyd, the only black challenged by the state. We realize that under State v. Slappy, 522 So.2d 18, 21 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), the striking of even a single black juror for racial reasons is impermissible. See also Reynolds v. State, 576 So.2d 1300 (Fla. 1991) (striking of only black venire member shifts burden to require justification for challenge). However, on this record, the mere fact that the state challenged one of four black venire members does not show a substantial likelihood that the state was exercising peremptory challenges discriminatorily, particularly since the effect of the challenge was to place another black on the jury. See Woods v. State, 490 So.2d 24, 26 (Fla.) (three peremptories exercised by state against blacks did not rise to level needed to require trial court to inquire into state's motives for challenges), cert. denied, 479 U.S. 954, 107 S.Ct. 446, 93 L.Ed.2d 394 (1986). The record does not reveal the requisite likelihood of discrimination to necessitate an inquiry into the state's reasons for challenging juror Farragut.
In support of his second contention, Taylor relies on Thompson v. State, 548 So.2d 198 (Fla. 1989). In Thompson, defense counsel raised timely Neil objections when the state exercised several peremptory challenges against black prospective jurors. The trial court did not require the state to provide the reasons for the challenges. However, after the state exercised a peremptory challenge against black prospective juror Bell, the court found that the state was systematically excluding blacks from the jury and asked the state to give its reasons for the challenge. However, the prosecutor told the court that he could not be systematically excluding because "you got a black sitting on the jury after I excuse Mr. Bell[.]" Thompson, 548 So.2d at 201. The trial judge then determined that the state was not systematically excluding blacks, did not require the state to provide its reasons for challenging juror Bell, and continued to allow the state to exercise peremptory challenges against black jurors without explanation. Ultimately, the trial court determined that the state was systematically excluding black prospective jurors and required the state to explain its challenge to a black juror. Thereafter, the state continued to exercise peremptory challenges against blacks but offered explanations for each strike. However, the state did not give, nor did the trial court require, reasons for the challenges to the first black jurors challenged by the state. In determining that a Neil violation occurred, this Court concluded:
The record reflects that the trial court below clearly entertained serious doubts as to whether the state was improperly exercising its peremptory challenges. Accordingly, the court should have resolved this doubt in favor of the defense and conducted an inquiry as to the state's reasons for all the challenged excusals. Slappy, 522 So.2d at 21-22. These reasons must be supplied by the prosecutor. Here, the trial court conducted an improper inquiry because it failed to question the state as to each and every peremptory challenge exercised against blacks once it became clear that the state might be improperly exercising its peremptory challenges. For this reason alone, we must reverse.
Thompson, 548 So.2d at 202. Thus, once a sufficient doubt is raised that a prospective juror may have been eliminated because of race, "the trial court must require the state to explain each one of the allegedly discriminatory challenges." Williams v. State, 574 So.2d 136, 137 (Fla. 1991).
However, the prosecutor's withdrawal of the challenge to Juror Boyd distinguishes this case from Thompson. The withdrawal, which was accepted by defense counsel, removed the court's determination *328 that the state might be exercising peremptory challenges discriminatorily. This eliminated the requirement that the court look back to the state's reasons for challenging juror Farragut. We caution, however, that a party may not continually withdraw peremptory challenges in order to avoid an inquiry into the reasons for other challenges to minority jurors. If it becomes apparent that a party is withdrawing challenges to minority jurors to avoid the requirements of Neil, the state must be required to provide the reasons for all allegedly discriminatory challenges.
Next, Taylor argues that the trial court erred in excluding testimony that the victim had been seen purchasing or using crack cocaine on various occasions before her death. Taylor proffered the testimony of three of the victim's sisters that they had seen her buy or use crack cocaine from five and one-half months to one month before her death. The trial court ruled that the testimony was irrelevant and refused to admit it.
Taylor's defense to the sexual battery charge was consent. He argues that the fact that Birch was a crack cocaine user was relevant to his defense because it corroborated his version of the events preceding the victim's death. Taylor argues that a crack cocaine user would be much more likely than a nonuser to approach a group of men at 4 a.m. in the location where this crime occurred and offer sex for money and drugs.
We find no error in the trial court's exclusion of this testimony. A person seeking admission of testimony must show that it is relevant. Stano v. State, 473 So.2d 1282, 1285 (Fla. 1985), cert. denied, 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986). To be relevant, evidence must tend to prove or disprove a fact in issue. Id. The fact that the victim may have used or purchased crack cocaine on occasions prior to her death does not tend to show that she consented to sex with Taylor on the night in question. None of the witnesses whose testimony was excluded had observed the victim offer sex for drugs or money. Absent a link between the prior cocaine use and sexual activity by the victim, the testimony simply was not probative of whether she consented to sexual activity with Taylor before the fatal beating.
Next, Taylor argues that the trial court erred in denying his motions for judgment of acquittal. Taylor was charged with premeditated murder and with felony murder based on the alleged sexual battery. He claims that the state's circumstantial evidence was legally insufficient to prove lack of consent to the sexual battery and premeditation. We disagree.
A court should not grant a motion for judgment of acquittal unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law. Lynch v. State, 293 So.2d 44, 45 (Fla. 1974). In moving for judgment of acquittal, Taylor admitted the facts in evidence as well as every conclusion favorable to the state that the jury might fairly and reasonably infer from the evidence. If there is room for a difference of opinion between reasonable people as to the proof or facts from which an ultimate fact is to be established, or where there is room for such differences on the inferences to be drawn from conceded facts, the court should submit the case to the jury. Id. We find competent, substantial evidence of premeditation and lack of consent to submit those issues to the jury. Hufham v. State, 400 So.2d 133, 135-36 (Fla. 5th DCA 1981) ("Once competent, substantial evidence has been submitted on each element of the crime, it is for the jury to evaluate the evidence and the credibility of the witnesses.").
To prove a fact by circumstantial evidence, the evidence must be inconsistent with any reasonable hypothesis of innocence. Further, to establish premeditation by circumstantial evidence, the state's evidence must be inconsistent with every other reasonable inference. The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is to be decided by the jury. Cochran v. State, 547 So.2d 928, 930 (Fla. 1989). However, the jury need not believe the defense version of facts on which the state has produced conflicting *329 evidence. Id. On the question of lack of consent, even accepting Taylor's assertion that the victim initially agreed to have sex with him, the medical examiner's testimony contradicted Taylor's version of what happened in the dugout. According to Taylor, he had vaginal intercourse with the victim for less than a minute without full penetration. He testified that she then indicated that she did not want to have intercourse and began performing oral sex on him. The medical examiner testified that the extensive injuries to the interior and exterior of the victim's vagina were caused by a hand or object other than a penis inserted into the vagina. Given the evidence conflicting with Taylor's version of events, the jury reasonably could have rejected his testimony as untruthful. Cochran, 547 So.2d at 930.
Further, the jury reasonably could have rejected as untruthful Taylor's testimony that he beat the victim in a rage after she injured him. Although Taylor claimed that the victim bit his penis, an examination did not reveal injuries consistent with a bite. According to Taylor, even after he sufficiently incapacitated the victim by choking her so that she released her bite on him, he continued to beat and kick her. The medical examiner testified that the victim sustained a minimum of ten massive blows to her head, neck, chest, and abdomen. Virtually all of her internal organs were damaged. Her brain was bleeding. Her larynx was fractured. Her heart was torn. Her liver was reduced to pulp. Her kidneys and intestines were torn from their attachments. Her lungs were bruised and torn. Nearly all of the ribs on both sides were broken. Her spleen was torn. She had a bite mark on her arm and patches of her hair were torn off. Her face, chest, and stomach were scraped and bruised. Although Taylor denied dragging the victim, evidence showed that she had been dragged from one end of the dugout to the other. The evidence was sufficient to submit the question of premeditation to the jury. See Heiney v. State, 447 So.2d 210, 215 (Fla.) (premeditation may be inferred from the manner in which the homicide was committed and the nature and manner of the wounds), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984).
Taylor raises three issues related to the penalty phase of his trial. First, he claims that the prosecutor made improper, inflammatory closing argument and misled the trial court to believe that this Court had approved the argument when the Court had expressly disapproved it in Jackson v. State, 522 So.2d 802 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 153 (1988). Because of our disposition of this claim, we need not reach the other two.
In an attempt to dissuade the jury from recommending life imprisonment, the prosecutor made the following argument:
[B]ut what about life in jail? What can one do in jail? You can laugh, you can cry, you can eat, you can read, you can watch tv, you can participate in sports, you can make friends.
In short, you live to find out about the wonders of the future. In short, it is living. People want to live.
If Geraldine Birch had the choice of life in prison or being in that dugout with every one [of] her organs damaged, her vagina damaged, what choice would Geraldine Birch have made? People want to live.
See, Geraldine Birch didn't have that choice because this man right here, Perry Taylor, decided for himself that Geraldine Birch should die. And for making that decision he too deserves to die.
In Jackson, we said:
We agree with Jackson's argument that the prosecutor's comment that the victims could no longer read books, visit their families, or see the sun rise in the morning as Jackson would be able to do if sentenced only to life in prison was improper because it urged consideration of factors outside the scope of the jury's deliberations.
Id. at 809.
Aware that the prosecutor had used this argument previously, defense *330 counsel prior to closing arguments raised an objection to its use in this case. The prosecutor sought an in limine ruling as to its propriety. The prosecutor told the trial court that this Court had approved a similar argument in Hudson v. State, 538 So.2d 829 (Fla.), cert. denied, ___ U.S. ___, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989). Hudson's sole reference to the issue is found in a footnote:
Hudson also argues that he should receive a new penalty hearing because the prosecutor's closing argument and the trial court's refusal to give instructions requested by the defense deprived him of a fair trial. We have considered these arguments, but find that they are not supported by the record and that no reversible error occurred.
Hudson, 538 So.2d at 832 n. 6. The prosecutor had copies of the appellant's brief in Hudson to show the trial court what was argued in that case. The trial judge determined that Hudson required him to permit the argument.[4]
The prosecutor overstepped the bounds of proper argument. First, his reliance on Hudson was inappropriate. The Court in Hudson did not approve the argument made by the prosecutor. That case stands only for the fact that the prosecutor's argument, under the circumstances of that case, did not constitute reversible error.[5] Second, the Jackson opinion, which was issued a year before this trial, clearly prohibits this type of argument. While neither counsel called the court's attention to Jackson, the very brief to which the prosecutor referred cited Jackson for the proposition that such an argument should not be made. Finally, any doubt that the prosecutor should have known of Jackson is belied by the fact that the Jackson case was tried by his own state attorney's office. While we cannot say that the prosecutor intentionally misled the court, we believe that the circumstances of this case compel us to require a resentencing proceeding. Unlike Jackson, which involved a double murder and minimal mitigating circumstances, we cannot say that the offending argument constituted harmless error.
Accordingly, we affirm Taylor's conviction of murder, but we reverse the sentence of death and remand for resentencing before a new jury.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT and GRIMES, JJ., concur.
KOGAN, J., concurs in result only.
NOTES
[1] The testimony of defense witnesses Otis Allen and Adrian Mitchell, friends of Taylor, corroborated this portion of Taylor's testimony. Allen testified that he heard Birch tell Taylor that she wanted to have sex for money or crack cocaine and that he saw Birch and Taylor walk off toward the little league park together. Mitchell testified that he saw Birch talking to Taylor, then she walked away and he followed as though they were together.
[2] The trial court found no mitigating circumstances and three aggravating circumstances: (1) that Taylor had been convicted previously of a felony involving the use of violence to the person, to wit: sexual battery; (2) that the murder was committed while Taylor was in the commission of a sexual battery; and (3) that the murder was especially wicked, evil, atrocious, or cruel.
[3] Under the procedure being followed for jury selection, all prospective jurors were examined on voir dire, after which the state and the defense exercised their challenges at a single conference. Each juror was numbered, and as any of the first twelve were challenged, the next numbered juror would be added to the panel, subject to further challenge.
[4] The state's argument that this issue was not preserved for appeal because Taylor did not request a curative instruction or move for a mistrial is misplaced. There was no requirement that Taylor do so because his objection to the prosecutor's closing argument was overruled. Holton v. State, 573 So.2d 284 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991).
[5] It should be noted that no objection to the argument was interposed in Hudson.